**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Hisham Abdel-Ghaffar, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 5812 |
| | ) | |
| v. | ) | |
| | ) | |
| Illinois Tool Works, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT
(Civil Rights and Employment Discrimination)**

**Introduction**

1. Plaintiff Hisham Abdel-Ghaffar seeks redress for religious discrimination and national origin discrimination. This case is brought for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981.

**Jurisdiction**

2. Jurisdiction of this Court is provided by 28 U.S.C. §§ 1331 and 1343.

3. On February 16, 2012, Plaintiff timely filed a charge of religious discrimination and national origin discrimination with the EEOC. (See attached.)

4. On April 28, 2012, Plaintiff received a Notice of Right To Sue. (See attached.)

5. Venue is proper in this judicial district because the Defendant resides here, and all of the events occurred here.

**The Parties**

6. Plaintiff is a Muslim of Egyptian national origin and ancestry. He worked for Defendant in the Northern District of Illinois.

7. Defendant, Illinois Tool Works, Inc., is a corporation doing business in the Northern District of Illinois. At all relevant times, Defendant has had more than 20,000 employees in the U.S.

## Facts Upon Which Claims are Based

8. Plaintiff has a PhD in wireless communication. He is a subject matter expert (SME) in his field of wireless / mobile communications and network architecture. Prior to working for Defendant, Plaintiff worked in the wireless communication field for Ericsson, Lucent Technologies/Bell Labs, Tollgrade Communications, and AT&T. He performed satisfactorily at Ericsson, Lucent Technologies/Bell Labs, Tollgrade Communications, and AT&T.

9. In December 2010, while Plaintiff was employed by AT&T, Plaintiff was recruited by a recruitment firm, Systems Research Incorporated (SRI), for a job as a Senior Research Associate / Principal Research Engineer with Defendant.

10. Plaintiff's application materials, which he submitted to Defendant, identified him as being of Egyptian national origin and ancestry.

11. Plaintiff speaks English with an Egyptian accent.

12. On December 23, 2010, Plaintiff interviewed in person with Defendant. Plaintiff was interviewed by Electronics Department Manager Kathy Downie (non-Muslim, non-Egyptian), Technical Center Executive Director MaryAnn McNally (non-Muslim, non-Egyptian), Business Development Manager Mark Bauer (non-Muslim, non-Egyptian), Ashley Pedersen from Human Resources (non-Muslim, non-Egyptian), Mechanical R&D Manager Greg Topel (non-Muslim, non-Egyptian), and Senior Engineer Bill Meitzler (non-Muslim, non-Egyptian).

13. On January 5, 2011, Manager Kathy Downie called Plaintiff by phone and offered him the job with Defendant. At this time, Manager Kathy Downie was aware that Plaintiff was of Egyptian national origin.

14. On January 7, 2011, Plaintiff called Manager Kathy Downie by phone and accepted the job with Defendant. At this time, Manager Kathy Downie was aware that Plaintiff was of Egyptian national origin.

15. On Jan 17, 2011, Plaintiff gave his two-week notice to his then-employer, AT&T, so that he could start working for Defendant.

16. On January 25, 2011, the U.S. media reported the beginning of the Egyptian revolution. From that point, the Egyptian revolution was a major story in the U.S. media for months. The U.S. media reported that Egypt was a predominantly Muslim country and that the Muslim Brotherhood might come to power if the existing secular Egyptian government fell. The U.S. media reported that there had previously been tension between Egypt's Muslim majority and Egypt's Christian minority, and that Egyptian Christians feared that a possible new Egyptian government led by the Muslim Brotherhood would be hostile to Christians. (See Exhibit 1.) The U.S. media reported that Israeli officials feared that a Muslim Brotherhood government in Egypt would be hostile to Israel. (Exhibit 2.) On February 11, 2011, the U.S. media reported that the secular Egyptian government had fallen. Subsequently, throughout 2011, the U.S. media reported on the Muslim Brotherhood's involvement in attempts to establish a new Egyptian government. The U.S. media reported that Islamists were a powerful force in Egypt, and they wanted to establish a theocracy. (Exhibit 3.) The U.S. media also reported on increasing tensions and violence between some

Egyptian Muslims and Egyptian Christians after the fall of the secular Egyptian government. (Exhibits 4 and 5.)

17. Plaintiff began working for Defendant on February 7, 2011 as a Senior Research Associate / Principal Research Engineer.  He was the main wireless network architect in the Electronics Department of Defendant's Technical Center.  Electronics Department Manager Kathy Downie, Plaintiff's immediate supervisor, was out of the office during Plaintiff's first week of employment.

18. During his employment with Defendant, Plaintiff was the only Muslim and the only Egyptian in the Electronics Department of Defendant's Technical Center.

19. During his employment with Defendant, Plaintiff was the only Muslim and the only Egyptian reporting to Electronics Department Manager Kathy Downie.

20. Manager Kathy Downie's first day back at work after Plaintiff's start date was February 14, 2011.  She was hostile to Plaintiff immediately.

21. On various occasions, Plaintiff prayed at work during breaks.

22. On March 30, 2011 and June 28, 2011, Manager Kathy Downie was present during lunch breaks when one of Defendant's clients asked Plaintiff about the developing situation in Egypt.  Plaintiff and the client discussed the Muslim Brotherhood, Egyptian religious communities, Israel, and the future of Egypt.  Manager Kathy Downie was visibly uncomfortable during these discussions.

23. On August 12, 2011, colleagues asked Plaintiff why he was not eating lunch with them during a team meeting.  Plaintiff replied that that he was fasting during the daytime in observance of the Islamic holy month of Ramadan.  Manager Kathy Downie was present. Manager Kathy Downie was visibly uncomfortable during this conversation.  When Plaintiff

attended a farewell event for a co-worker at a restaurant during Ramadan, Manager Kathy Downie asked Plaintiff in an aggressive manner, "Why are you here? Aren't you supposed to be fasting?"

24. In August 2011, Plaintiff informed Manager Kathy Downie that, during his upcoming vacation in August 2011 and September 2011, he would be performing an Islamic pilgrimage in Mecca, Saudi Arabia, followed by a visit to Egypt. Manager Kathy Downie was visibly uncomfortable during this conversation.

25. Throughout his employment, Plaintiff performed his duties satisfactorily.

26. At various times, Manager Kathy Downie falsely criticized Plaintiff's performance.

27. At various times, Manager Kathy Downie sabotaged Plaintiff's performance, placed obstacles in his way, and prevented him from doing his job.

28. At various times, Manager Kathy Downie took away Plaintiff's responsibilities and reassigned them to non-Muslim, non-Egyptian employees.

29. At various times, Manager Kathy Downie was hostile to Plaintiff.

30. On August 8, 2011, Manager Kathy Downie placed Plaintiff on an unjustified performance improvement plan.

31. When Plaintiff left for his pilgrimage to Mecca, Saudi Arabia, he was excluded from email distribution lists regarding his projects at work.

32. On September 16, 2011, Manager Kathy Downie fired Plaintiff.

33. Senior Research Associates / Principal Research Engineers Todd Watson (non-Muslim, non-Egyptian) and Dan Dina (non-Muslim, non-Egyptian) were similarly-situated to Plaintiff and reported to Manager Kathy Downie. Manager Kathy Downie did not falsely criticize their performance; sabotage their performance; place obstacles in their way; prevent them from

doing their jobs; take away their responsibilities; deal with them in a hostile manner; place them on an unjustified performance improvement plan; or fire them.

## COUNT I

### (Title VII – Religious Discrimination, National Origin Discrimination)

34. Paragraphs 1-33 are restated herein.

35. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

36. Defendant's unlawful actions have caused Plaintiff lost pay, emotional distress, inconvenience, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

      A.      Lost pay and benefits;

      B.      Compensatory damages;

      C.      Punitive damages;

      D.      Attorney's fees and costs; and

      E.      Such other relief as law and justice allow.

## COUNT II

### (Section 1981 – Ancestry Discrimination)

37. Paragraphs 1-36 are restated herein.

38. Defendant intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 1981.

39. Defendant's unlawful actions have caused Plaintiff lost pay, emotional distress, inconvenience, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

      A.  Lost pay and benefits;

B.  Compensatory damages;

C.  Punitive damages;

D.  Attorney's fees and costs; and

E.  Such other relief as law and justice allow.

Respectfully Submitted,

*/s/ **Kamran Memon***

_____

Plaintiff's Attorney

Kamran Memon
200 S. Michigan Ave.
Suite 1240
Chicago, IL 60604
(312) 961-2354