# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HISHAM ABDEL-GHAFFAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 12 C 5812** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey T. Gilbert** |
| ILLINOIS TOOL WORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hisham Abdel-Ghaffar ("Abdel-Ghaffar") filed this lawsuit against his former employer defendant Illinois Tool Works, Inc. ("ITW"). Abdel-Ghaffar alleges national origin and religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and ancestry discrimination under 42 U.S.C. § 1981 ("Section 1981"). The parties have completed discovery, and this matter is before the Court on ITW's Motion for Summary Judgment [ECF No. 115]. ITW seeks judgment as a matter of law on all claims alleged in Abdel-Ghaffar's Amended Complaint [ECF No. 20]. For the reasons discussed herein, the Court grants ITW's Motion for Summary Judgment [ECF No. 115].

## I. LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). A court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a

'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page,* 715 F.2d 1238, 1243 (7th Cir. 1983). Conclusory allegations will not defeat a motion for summary judgment. *Thomas v. Christ Hosp. and Medical Center,* 328 F.3d 890, 893-94 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888-89 (1990)). Unsupported speculation also will not defeat a summary judgment motion; and an affidavit that includes general opinions and beliefs does not create a genuine issue of material fact sufficient to defeat summary judgment. *Cleveland v. Porco Co.*, 38 F.3d 289, 295 (7th Cir. 1994).

Importantly, when considering whether summary judgment is appropriate, courts must rely upon the statements of facts and responses thereto submitted by the parties. To that end, the parties must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the District Court for the Northern District of Illinois.

## A.    Local Rule 56.1 Requirements

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts . . . ." Local Rule 56.1(a). The nonmoving party opposing the motion for summary judgment then must file a response to this statement, as well as its own statement of additional facts if necessary. *See* Local Rule 56.1(b)(3). The moving

party then has an opportunity to admit or deny the nonmoving party's statement of additional facts. *See* Local Rule 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

The purpose of the Local Rule 56.1 statement of facts is to identify the relevant evidence supporting the material facts that the moving party contends are undisputed, not to make factual or legal argument. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). *Pro se* litigants are not excused from the obligation to comply strictly with the Northern District's Local Rules. *See Coleman v. Goodwill Indus. of Southeastern Wis. Inc.*, 423 Fed. App'x 642, 643 (7th Cir. 2011) (citations omitted) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

## B.    Abdel-Ghaffar Did Not Comply With Local Rule 56.1

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). Local Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for

summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1).

The failure of a nonmoving party to abide by the requirements of Local Rule 56.1 carries significant consequences. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3); *see also Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000). As stated above and repeated here for emphasis, the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Yancick,* 653 F.3d at 537; *Patterson,* 589 F.3d at 359; *Bordelon,* 233 F.3d at 527.

Abdel-Ghaffar filed a memorandum of law in opposition to ITW's Motion for Summary Judgment as required by Local Rule 56.1(b)(2) and responded to ITW's Local Rule 56.1 statement of facts as required by Local Rule 56.1(b)(3)(B). However, Abdel-Ghaffar's response to ITW's Local Rule 56.1 statement of facts does not comply with Local Rule 56.1(b)(3)(B) in many respects. Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement." Local Rule 56.1(b)(3)(B) (emphasis added). Most of Abdel-Ghaffar's responses to ITW's statements of fact are not concise and contain a significant amount of legal argument, conclusions, speculation, and purported factual statements unsupported by record citations. *See Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 382

n.2 (7th Cir. 2008) (holding that "[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts"); *see also Malec,* 191 F.R.D. at 585 (explaining that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument").

In his response to ITW's statement of facts, Abdel-Ghaffar's admitted some of ITW's facts. In most instances, however, Abdel-Ghaffar disputes the facts (in many instances without citation) and then proceeds to re-characterize them or argue why the facts propounded by ITW are wrong, relying in many instances on conclusory statements, personal opinion or unsupported speculation. For example:

> 14. Downie surmised when she interviewed and hired Plaintiff that he was likely of Egyptian national origin or ancestry, but she did not consider Plaintiff's national origin or ancestry, or any other candidate's possible national origin or ancestry, in any way when she made the decision to interview Plaintiff and made the decision to hire him. (Downie Dec. ¶23).

> **RESONSE:** The facts in paragraph 14 are in dispute. It is undisputed that Downie was aware or recognized at the interview time that Plaintiff was of Egyptian national origin (Downie Decl. ¶23). Downie screened and interviewed multiple other candidates for the position (Downie Decl. ¶ 16, 17), but the citations of Defendant do not prove if these other candidates were reasonably-qualified or better qualified than Plaintiff or if they were of different national origin than Plaintiff. Downie needed to quickly hire a senior research associate with wireless and mobile communication main expertise and all other interviewers were impressed with Plaintiff. (Add. Fact ¶1; Downie Decl. ¶ 15; McNally Decl. ¶ 13; Exhibits pre-1, 2, 3, 4, 5). Plaintiff denies that Downie did not consider Plaintiff's or other candidates' national origin as she interviewed or hired him because of lack of information about qualifications and national origin of other Candidates. Plaintiff further states that Downie quickly hired him despite her knowledge of Plaintiff's national origin for lack of better- or reasonably-qualified candidates of possibly different national origin to hire.

*       *       *

5

16. Downie had final hiring authority and in early January 2011 she made the decision to hire Plaintiff as a Senior Research Engineer. (Pl. Dep. 96:17-98:11; Downie Dec. ¶¶ 20-21.)

**RESPONSE:** The facts in paragraph 16 are in dispute. Plaintiff admits that Downie was his supervisor and hiring manager, but denies that Downie was the only decision maker that ITW relied on to hire Plaintiff. ITW's offer letter was signed and delivered by Sr. HR generalist Ashley Pedersen and it identifies Downie as Plaintiff's supervisor (Exhibit new-1 at ITW0016; Pl. Dep. 96:17-98:11). Plaintiff held multiple interviews on 12/23/10 (Exhibit pre-2) and presented two research papers out of four topics (Exhibit pre-3) to all engineering interviewers. McNally recommended Plaintiff for hire (McNally Decl. ¶ 15), all ITW interviewers were impressed with Plaintiff's qualifications including Downie (Downie Decl. ¶¶ 19-21; Exhibit pre-4) and finally Ashley Pedersen of ITW HR signed ITW offer letter to Plaintiff. ITW's decision to hire Plaintiff represented all combined opinions and approvals given to Downie. ITW failed to admit that Downie was not the only decision maker that ITW relied on to hire Plaintiff (Resp. RFA ¶ 2).

\*            \*            \*

19. Downie did not then, and does not now, have any detailed knowledge of the "Egyptian Revolution" or its political or religious aspects, or hold any negative views or opinions about Egyptians or Muslims. Downie had seen news stories about the events in Egypt in early 2011 but did not pay close attention, and her recollection is that the Egyptian Revolution was generally perceived as a positive thing for Egypt and its people. (Downie Dec. ¶ 75.)

**RESPONSE:** The facts in paragraph 19 are in dispute. Plaintiff admits that Downie confirmed her knowledge that the Egyptian Revolution took place and she watched stories about the events on media nightly news (Downie Decl. ¶ 75), but her claim on lacking "detailed knowledge" is inconsistent with her hostility towards Plaintiff in the week of 2/14/11 (response to paragraph 18). Downie's recollection that the Egyptian Revolution was generally perceived as a positive thing for Egypt and its people is not in dispute, regardless of the intricate and competing interests in Egypt including the "Muslim Brotherhood" or Egyptian Christians (see paragraph 18). The statement that Downie does not and did not hold any negative views or opinions about Egyptians or Muslims is

denied (see response to paragraph 18 "based on multiple circumstantial evidences, Downie's views are not welcoming to the fact that an Egyptian Revolution took place" with citations therein).

\* \* \*

43. On or about August 6, 2011, Dina assigned the trade-off analysis of the various wireless technologies (that Plaintiff never completed) amongst the team, and assigned Plaintiff only the trade-off data for Wi-Fi. Ultimately, Dina determined that Zig-Bee was the superior wireless technology option for the Miller project. Plaintiff disagreed with that choice. (Pl. Dep. Ex. 15 at HAG-0967.)

**RESPONSE:** The facts in paragraph 43 are in dispute. On 8/6/11, Dina assigned the wireless tradeoff parameters of various wireless technologies amongst the team, <u>NOT</u> because Plaintiff didn't complete them, <u>BUT</u> because Downie's plan to assign the wireless tradeoffs in July 19-22 to Carrington and Meitzler on her task schedules A and B (Exhibits jul-5, 9) had failed. Dina selected ZigBee early on 7/28/11 before tradeoffs analysis (private email Exhibit jul-8, ITW11391-392) and made final selection in team meeting on 8/10/11. Dina's determination that ZigBee was the <u>superior technology</u> is denied based on Dina and the team's <u>failure to do testing</u> as alleged by Downie (see Add. Fact ¶ 39) or <u>understand wireless requirements</u> (see response to paragraph 42). Plaintiff admits that he disagreed with Dina's review of "system design tradeoffs" (regardless of WiFi or ZigBee) because it was superficial and inadequate for multiple reasons (Pl. First Decl., St. III, ¶ 15 at HAG 0971-0972). For example, Dina's review ignored the technology capabilities, denied a proper wireless link design to investigate the wireless range of the welding cell and demonstrated lack of awareness about basic radio power and link budget units and numbers. Dina also proposed WiFi for the central link to connect to the Internet, but eventually failed to demonstrate that ZigBee and WiFi can coexist in loaded environments (Exhibits pte-1, 27; Pl. Third Decl., St. VI, ¶ 3 at HAG 1096-1097).

\* \* \*

45. Based on Downie's continued observations of Plaintiff's performance, and feedback Downie received from Plaintiff's co-workers, Downie felt that Plaintiff lacked the technical competence required to do his job. (Downie Dec. ¶¶ 57-58.)

**RESPONSE:** The facts in paragraph 45 are in dispute. Downie never confronted Plaintiff with any evidence for lack of "technical competence" and never stated such claim to Plaintiff during his employment, even during the PIP session on 8/8/11. Downie's private claims (email Exhibits 3q-11, 12, 10, ITW3942, ITW3943 and ITW11411-416; August 3-6) regarding Plaintiff's alleged lack of technical competence are denied as being dishonest unworthy of credence. They have been refuted in Plaintiff's first declaration (St. IV, ¶ B1 at HAG 0985-0986; St. IV, ¶ B2 at HAG 0986-0990; and St. V, ¶¶ 3, 12 at HAG 1054, 1062- 1063 for Meitzler and Annex to St. V, ¶ A1, A3.b at HAG 1068-1073).

46. On August 8, 2011, Downie placed Plaintiff on a performance-improvement plan ("PIP") during a meeting with Plaintiff and Peter Kyrychenko (then-Corporate HR Director for ITW), and warned him that he needed to make immediate improvement to his performance or his employment could be terminated. (Pl. Dep. 347:2-351:4; Pl. Dep. Ex. 15 at HAG-0969-70; App. W, Pl. Dep. Ex. 22; Downie Dec. ¶¶ 59-61; Kyrychenko Dec. ¶ 21.)

**RESPONSE:** The facts in paragraph 46 are in dispute. The facts in paragraph 46 do not properly describe all what happened during the PIP session on 8/8/11. For a full transaction of the PIP session and subsequent PIP proceedings, see the brief chronology covering the PIP (Pl. First Decl., St. III, ¶ 14 at HAG 0969-0970) and the more detailed "Plaintiff's PIP Summary Account" (Pl. First Decl., St. IV, ¶ C12 at HAG 1041-1049). For a full transaction of responses tailored for all eleven (11) PIP tasks and Downie's updates, see section "C" of Statement IV (Pl. First Decl., St. IV, ¶ C1-C11 at HAG 0991-1041).

\*         \*         \*

51. On August 17, 2011, Plaintiff submitted an unsolicited new project plan to Downie, stating that he did not agree with Dina's project plan, and told Downie that he could not support Dina's plan and it was his "duty" to present his critique to Miller and make them aware of the problems he perceived with Dina's plan. (Pl. Dep. 174:1-177:20; 194:9-16; 207:3-211:12; Pl. Dep. Ex. 15 at HAG-0976; Downie Dec. ¶ 65.)

**RESPONSE:** The facts in paragraph 51 are in dispute. Plaintiff denies that his wireless proposal plan (Downie Decl. Ex. 19 at ITW4303-4305) was unsolicited as he testified (Pl. Dep. 207:3-212:17), but it was his genuine task "writing proposal" since July 22, 2011. Despite Dina taking the lead on 7/26/11 (Exhibit jul-6,

ITW0400) to arrange the Aug. 1-12 meetings (not write a proposal), Downie still assigned "writing proposal" on 7/29/11 to Plaintiff on her task schedule B (Exhibit jul-9 at HAG 0230-0231, task # 55 due by 10/21/11). Downie never sent the team any update to task schedule B or reassigned any tasks publicly since 7/29/11, but she privately requested Dina to send an architecture document on 8/5/11 (Exhibit 3q-11, ITW3942) and on 8/9/11 (Exhibit 3q-19, ITW11417). Thus Downie was not straight or transparent in her task assignments and she sabotaged Plaintiff's tasks. Plaintiff further states that after Dina sent his flawed draft document (Exhibit pro-1) on 8/12/11, Plaintiff advised the team and Downie by email on 8/14/11 (Downie Decl. Gr. Ex. 17-7, ITW4258-4265 at ITW4260) that the architecture needs to be rectified before being discussed with Miller and stated, *"I would like to kindly ask all the team members to not disclose any parts of this architecture proposal with any of our Miller associates."* Plaintiff further states that his new proposal plan (Downie Decl. Ex. 19 at ITW4303-4305) contained a critique of 9 problems with Dina's draft proposal and a new proposal summary that suggested (among other ideas) using the power source as a backup wireless master node instead of the welding gun.

The remaining sentence "and told Downie that he could not support Dina's plan and it was his "duty" to present his critique to Miller and make them aware ..." is denied as it misrepresented the facts and was abducted from a context in which Plaintiff expressed concerns to Downie about the proposal problems and consulted with her regarding the forthcoming steps and the need to be honest with the customer (Miller). Plaintiff told Downie that he can't support Dina's proposal with its flawed basis unless Miller people accept it, but he would support any efforts to rectify Dina's proposal and submit a good proposal to Miller10. Downie replied stating, *"I also do not want you or anyone on the team talking to Miller folks on the state of the architecture"*, which Plaintiff already told the team on 8/14/11. Plaintiff testified that he never contacted Miller to talk about the state of architecture (Pl. Dep. 205:23-207:2) and there was never any issue about that.

Plaintiff's Response to ITW Statement of Undisputed Material Facts in Opposition to ITW's Motion for Summary Judgment [ECF No. 142], at 5-8, 24-26, and 29-30.

As these examples illustrate, Abdel-Ghaffar's responses to ITW's statement of facts contain a significant amount of immaterial and irrelevant information that is not germane to this

Court's decision on summary judgment. They hopelessly complicate the analysis of whether Abel-Ghaffar disputes material facts. Abdel-Ghaffar's responses are not concise and are replete with argument, speculation, personal beliefs and unsupported conclusions.

It is not the role of the court to parse the parties' statements of facts and exhibits to construct the undisputed facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F. Supp. 2d 984, 985 (N.D. Ill. 2010) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to determine whether there is sufficient evidence to support a party's claim. *See Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job . . . to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006); *see also Hamm v. Nestle USA, Inc.*, 2013 WL 4401328, at *2 (N.D. Ill. Aug. 15, 2013). The Court recognizes that Abdel-Ghaffar is not a trained legal advocate, but his responses complicate this process rather than simplify it.

In many instances, Abdel-Ghaffar either fails to cite to his responses to ITW's Rule 56.1 statement of fact or his statement of additional facts or to any supporting evidence other than his own ipse dixit, or directly cites to the record, including a host of underlying documents, pleadings and exhibits. Courts in this district also repeatedly have held that, in memoranda of law filed in support of, or in opposition to, motions for summary judgment, parties should cite to the specific Local Rule 56.1 statements of fact in support of their arguments, not to the record directly. *See Morningware, Inc. v. Hearthware Home Products Inc.*, 2012 WL 3721350, at *3 (N.D. Ill. 2012); *LaSalvia v. City of Evanston*, 806 F. Supp. 2d 1043, 1046 (N.D. Ill. 2011);

*Daoust v. Abbott Laboratories*, 2006 WL 2711844, at *4 (N.D. Ill. 2006) ("[C]itations in the [summary judgment memoranda] . . . should be to the 56.1(a) or (b) statement only.").

For litigants appearing in the Northern District of Illinois, the Local Rules are clear and unequivocal — compliance with Local Rule 56.1 is a critical, and mandatory, component of summary judgment motion practice. "The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Abdel-Ghaffar chose not to comply with the Local Rule. When he was represented by counsel and now that he is not, Abdel-Ghaffar repeatedly has insisted on filling the record with declarations and "evidence" that are not tied to material and relevant facts nor advance legal arguments. He has complicated this process, and the Court is not required to scour the record to figure out whether there are relevant and material facts that are disputed and would support the denial of ITW's summary judgment motion. As discussed below, however, giving Abdel-Ghaffar the benefit of any doubt, no material fact disputes appear to exist that would require the Court to allow this case to go to a jury.[1]

For all of these reasons, the Court strikes Abdel-Ghaffar's responses to ITW's statement of material facts [ECF. No 142] for his failure to comply strictly with Local Rule 56.1(b)(3)(B) and deems admitted ITW's statement of facts [ECF. No.117]. Abdel-Ghaffar's failure to provide concise responses devoid of argument and speculation justifies the wholesale striking of his Local Rule 56.1(b)(3)(B) response to ITW's statement of facts. *See e.g.*, *Stagman v. Ryan*, 176

---

[1] To the extent that Abdel-Ghaffar properly complied with the Federal Rules of Civil Procedure in submitting his Local Rule 56.1(b)(3)(C) statement of additional facts [ECF No. 143], the Court will consider the evidence in the light most favorable to him as required by Rule 56 of the Federal Rules of Civil Procedure. Much like his responses to ITW's statement of facts, Abdel-Ghaffar's statement of additional facts also contains argument, personal opinion and speculation, which is not permitted under either Federal Rule of Civil Procedure 56 or Local Rule 56.1 as discussed above.

F.3d 986, 998 (7th Cir. 1999) (affirming a district court's decision to strike statements of purported fact that were not based on personal knowledge and contained speculation, conclusions and argument); *Ercoli v. Paiva*, 2005 WL 1651042, at *2 (N.D. Ill. July 5, 2005) (striking plaintiff's responses to defendant's 56.1 statement containing "rambling statements" that were "neither short, concise, nor nonargumentative" and plaintiff's affidavits that were "argumentative or not based on personal knowledge or both").

## II. STATEMENT OF FACTS

The following is a very brief summary of the <u>material undisputed facts</u> taken from the parties' Local Rule 56.1 statements of facts and/or responses thereto. *See* [ECF Nos. 117, 142, 143, and 168]. To be clear, notwithstanding the Court's decision to strike Abdel-Ghaffar's Local Rule 56.1(b)(3)(B) responses, the Court has reviewed in detail all of the voluminous material Abdel-Ghaffar submitted in opposition to ITW's Motion for Summary Judgement. Much of that evidence is not material or relevant to the issues presented in ITW's Motion for Summary Judgment and, therefore, not germane to the Court's decision to grant summary judgment to ITW. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (if the evidence provide by the nonmoving party is merely colorable or is not significantly probative, summary judgment should be granted). To the extent Abdel-Ghaffar's submissions do contain relevant and material information, however, the Court has considered it.

Hisham Abdel-Ghaffar is a Muslim of Egyptian national origin. He was a Senior Research Engineer in the Electronics Department of the Technology Center for ITW for only seven months from February 7, 2011, until September 16, 2011. Kathy Downie, the Director of Electronics at ITW, hired Abdel-Ghaffar to lead a project for Miller Electric, an ITW business unit ("the Miller project"). Downie also supervised Abdel-Ghaffar on the Miller project.

Within just a few months of his hiring, Downie removed Abdel-Ghaffar from the project-lead role and replaced him with Dan Dina as the project-lead. Downie also expanded the Miller project team to include four more engineers from the ITW Electronics Department.

On August 8, 2011, six months after he was hired, Downie put Abdel-Ghaffar on a performance improvement plan ("PIP") that outlined specific actions items and stated that his failure to improve may result in further corrective action, including termination of employment. The PIP addressed Abdel-Ghaffar's need to improve his interpersonal skills and his time-management and communication skills, and specifically required that he provide his draft findings for Downie to review before presentation to the client. Abdel-Ghaffar did not agree with the PIP and disputes that he was not performing his job well. Abdel-Ghaffar also did not agree with the Miller team's project proposal, and he told Downie he would not support the team's proposal.

On August 12, 2011, Abdel-Ghaffar was fasting for Ramadan. That same day, there was an after work gathering at a restaurant which Abdel-Ghaffar attended. When he arrived at the restaurant, Downie inquired: "Why are you here? Aren't you supposed to be fasting?" Abdel-Ghaffar was offended by Downie's comments. He stayed for a few minutes and then left because he felt unwelcome.

On September 16, 2011, seven months after he was hired, Abdel-Ghaffar's employment was terminated. Downie did not terminate his employment until after Abdel-Ghaffar returned from a previously approved vacation.

# III. DISCUSSION

Abdel-Ghaffar asserts claims of discrimination on the basis of his national origin, ancestry and religious beliefs under Title VII and Section 1981. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee in the terms, conditions or privileges of employment on the basis of an employee's gender, race, religion or national origin. *See* 42 U.S.C. § 2000e-2(a). Under Section 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The phrase "make and enforce contracts" prohibits national origin or ancestry discrimination in the employment context, including harassment, discharge, promotion, transfer, retaliation and hiring. *See Jones* v. *R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004).

At the summary judgment stage, courts generally apply the same analysis to discrimination claims brought under Section 1981 as they apply to Title VII claims. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (stating that courts "generally have applied the same *prima facie* requirements to discrimination claims brought under Title VII and section 1981"); *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 641 n. 5 (7th Cir. 2006) (stating that "both Title VII and § 1981 employ the same analysis"). Because Title VII and Section 1981 claims use the same standards, a plaintiff's failure to establish a *prima facie* case of discrimination under Title VII for a given employment action necessarily forecloses a Section 1981 claim arising from the same conduct. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996).

The Seventh Circuit has recognized a plaintiff may prove his claim for discrimination in two ways, which have been labeled the "direct" and "indirect" methods of proof. *Silverman v. Board of Education of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). Over the past several

years, however, the Seventh Circuit has questioned the utility of the distinctions between these two methods of proof, recognizing that both methods converge on the same fundamental question: could a reasonable trier of fact infer discrimination? *See, e.g., Bass v. Joliet Public School District No. 86*, 746 F.3d 835, 840 (7th Cir. 2014); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013); *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013); *Naficy v. Illinois Dep't of Human Services*, 697 F.3d 504, 514 (7th Cir. 2012); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 313-14 (7th Cir. 2012); *Coleman v. Donahoe*, 667 F.3d 835, 862-63 (7th Cir. 2012) (Wood, J., concurring). At present, however, a plaintiff in the Seventh Circuit can utilize both the direct and indirect methods to prove an employment discrimination claim.

## A.     Abdel-Ghaffar Cannot Point To Any Direct Evidence Of Discrimination

A plaintiff may establish unlawful discrimination under the direct method of proof by presenting direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). A plaintiff must offer evidence of three elements: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected status and the adverse employment action. *Greengrass v. Int'l Monetary Systems Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015). Direct evidence of discrimination essentially consists of an admission that the employer took an adverse employment action against an employee based upon prohibited animus. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Circumstantial evidence of intentional discrimination can consist of suspicious timing, ambiguous statements, differing treatment of similarly situated employees, personal animus, pretext and other evidence which allows the jury to reasonably infer retaliation. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (citing *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th

Cir.2007)). To survive summary judgment, a plaintiff must present evidence of a link between his protected status and the adverse employment action. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003) ("Bigotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action.").

Here, Abdel-Ghaffar concedes that there is no direct evidence of intentional discrimination based on his national origin, ancestry or religious beliefs. Nevertheless, he argues that a jury could infer discriminatory animus circumstantially from Downie's conduct. In support of this argument, Abdel Ghaffar relies heavily on his own declarations and speculation that Downie harbored discriminatory animus for him based on her alleged reaction to discussion of the Egyptian Revolution and a comment she made about his fasting for Ramadan during an after-work hours gathering. However, the ostensible discriminatory comments made by Downie about the Egyptian Revolution or his fasting for Ramadan that Abdel-Ghaffar concludes were directed at him because of his national origin, ancestry and religious beliefs are not sufficient to establish a convincing mosaic of discrimination in violation of the civil rights laws. Although Abdel-Ghaffar sincerely may believe that Downie's comments and conduct are evidence of unlawful discrimination or discriminatory animus against him, a plaintiff's bare or conclusory assertion that an employer fired him because of his protected status — regardless of how firmly the terminated employee holds that conviction — is not sufficient to establish a link between the employee's protected status and the termination. *See Winsley*, 563 F.3d at 605.

In many instances, the statements or observations included in Abdel-Ghaffar's declarations are inadmissible either because they are conclusory or speculative, lack foundation or because they are irrelevant. Federal Rule of Civil Procedure 56 requires that affidavits or

declarations "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" therein. FED. R. CIV. P. 56(c)(4). Speculation and conjecture contained in a declaration cannot create a material issue of fact. *See Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659-60 (7th Cir. 1991) ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.").

Abdel-Ghaffar's purported evidence of discrimination falls well-short of linking Downie's decision to terminate his employment to some discriminatory animus based on his national origin, ancestry or religious beliefs. Abdel-Ghaffar points to one specific comment that occurred at an after-work gathering at a restaurant on August 12, 2014. That day, Abdel-Ghaffar was fasting for Ramadan. When he arrived at the restaurant, Downie inquired: "Why are you here? Aren't you supposed to be fasting?" Abdel-Ghaffar was offended by Downie's comments. He stayed for a few minutes and then left because he felt unwelcome.

In the Court's view, while Downie's questions may have been too flip, insensitive, or inappropriate, there is nothing objectively disparaging or derogatory about them, nor are they evidence of discrimination. *See e.g., Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010) (no direct evidence of discrimination where comments did not refer to or cause the termination); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (comment "made in a casual conversation during a long car trip, a setting unrelated to discussions of [plaintiff's] repeated work deficiencies, which eventually led to her dismissal" was not direct evidence of discrimination); *Alrazzaq v. Walgreen Co.*, 2014 WL 1202967, at *10 n.7 (N.D. Ill. Mar. 21,

2014) (despite conversation about Ramadan, summary judgment granted when there was no evidence that plaintiff's observance of Ramadan factored into decision to terminate for workplace errors and failure to complete training); *Komal v. Arthur J. Gallagher & Co.*, 833 F. Supp. 2d 855, 863 (N.D. Ill. 2011) ("Asking [plaintiff] whether he was a Muslim was clumsy and discourteous, violating the rules of workplace etiquette, but nothing more."). The Seventh Circuit repeatedly has held that isolated comments by a supervisor that may be inappropriate and offensive do not rise to a level that is sufficient to support a claim of discrimination or harassment.[2]

In other words, the inference that Abdel-Ghaffar would like the Court to draw from his declarations — that even though Downie hired Abdel-Ghaffar knowing he is a Muslim of Egyptian national origin, she either held a discriminatory animus toward him when he was hired or developed a discriminatory animus against him after he was hired, which manifested itself in Downie unjustifiably criticizing his work performance, putting him on a PIP and ultimately terminating his employment because of his national origin, ancestry or religious beliefs — is not supported by the evidence. Abdel-Ghaffar argues that Downie harbored some discriminatory

---

[2] *See e.g., Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (holding that vague and conclusory allegations of being harassed and intimidated by a supervisor are not sufficient to defeat summary judgment and sporadic inappropriate and rude comments by a supervisor "do not rise to the level of conduct that alters the terms and condition of employment"); *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604-05 (7th Cir. 2012) (holding that an isolated comment is not direct evidence of discrimination even if a plaintiff interpreted it as motivated by a discriminatory animus); *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009) ("An isolated or 'stray remark' is typically insufficient to create an inference of discrimination. . . ."); *Kirley v. Bd. of Ed. of Maine Township High School*, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 13, 2013) (recognizing that the Seventh Circuit consistently has held that "isolated comments that are no more than 'stray remarks' in the work place are insufficient to establish that a particular decision was motivated by discriminatory animus"); *Hogg v. Fraser Shipyards, Inc.*, 407 F. Supp. 2d 1027, 1035 (N.D. Ill. 2006) ("[A]n isolated question about when an employee plans to retire is insufficient to give rise to an inference of age discrimination under the direct method of proof in an AEDA claim.") (citation omitted); *Beard v. Hall Drive-Ins, Inc.*, 2005 WL 1705622, at *6 (N.D. Ill. July 20, 2005) (three examples of isolated, temporally remote comments allegedly made by the defendant owner do not create a triable issue of material fact regarding age discrimination); *Williams v. Metro. Water Reclamation Dist. of Greater Chicago*, 2002 WL 484860, at *5 (N.D. Ill. Mar.28, 2002) (finding that an isolated race-based discriminatory comment – "it wasn't the Italians that I had a problem with, it was you blacks"– was not actionable because it was neither threatening nor severe and other evidence indicated that the supervisor was harsh, difficult and unfair, but did not suggest that the supervisor harbored racial animus).

animus for him when he was hired but she was forced to hire him because there were no other qualified candidates. There is absolutely no evidence in the record to support that theory, and it is objectively unreasonable. Abdel-Ghaffar also points to no direct evidence of discrimination and no circumstantial evidence exists from which a reasonable trier of fact reasonably could conclude that Abdel-Ghaffar's national origin, ancestry, or religious beliefs played any role in Downie's decision to put him on a PIP or ultimately to terminate his employment. Without more, Abdel-Ghaffar's circumstantial evidence does not establish a "convincing mosaic of discrimination," and there is no evidence of any link between his national origin or his religious beliefs and his termination by ITW.

**B.    Abdel-Ghaffar Cannot Establish A *Prima Facie* Case Of Discrimination Under The Indirect Method Of Proof**

If a plaintiff cannot establish discrimination with direct evidence, then a plaintiff must proceed under the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *See Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 682 (7th Cir. 2001). The *McDonnell Douglas* pretext analysis places the initial burden on the plaintiff to establish a *prime facie* case of discrimination. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600 (7th Cir. 2001). To state a claim for either national origin, ancestry or religious discrimination, a plaintiff initially must demonstrate: (1) he is a member of a protected class; (2) he performed his job satisfactorily and was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action;

---

[3] As referenced above, in September 2013, one panel of judges in the Seventh Circuit questioned whether the *McDonnell Douglas* test should be modified. In *Perez v. Thorntons, Inc.*, 731 F.3d 699 (7th Cir. 2013), the panel decided to "recognize and join the majority of active judges in this circuit who have opined that the time has come to jettison the 'ossified direct/indirect [*McDonnell Douglas*] paradigm' in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination." 731 F.3d at 703. The Seventh Circuit has stated that while the approach in *Perez* is being considered, "the Court has continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact." *Chaib v. Indiana*, 2014 WL 685274, at *4 (7th Cir. Feb. 24, 2014). For the moment then, the *McDonnell Douglas* test still is the controlling standard in the Seventh Circuit.

and (4) other similarly-situated employees who are not members of the protected class were treated more favorably. *See Koski v. Standex Intern. Corp.*, 307 F.3d 672, 676 (7th Cir. 2002); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001).

Only if a plaintiff successfully produces evidence of a *prima facie* case does the burden then shift to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). If the defendant satisfies its burden, the presumption vanishes, and the plaintiff then must prove that the defendant's stated reason is mere pretext masking discriminatory action. *Hicks*, 509 U.S. at 506. A plaintiff can establish pretext by showing that a discriminatory reason more likely than not motivated the employer or that the employer's proffered reason is unworthy of credence because it has no basis in fact, was not the real reason for the adverse action, or was insufficient to justify the adverse action. *See Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995).

In this case, Abdel-Ghaffar has not established a *prima facie* case of either national origin, ancestry or religious discrimination under the indirect method. While there is no dispute that Abdel-Ghaffar is a member of a protected class because he is a Muslim of Egyptian national origin, the objective and undisputed evidence is clear that his supervisor believed that he was not performing his job satisfactorily and was not meeting ITW's legitimate performance expectations and he was fired for his poor performance.

It is abundantly clear to the Court that Downie was not satisfied with Abdel-Ghaffar's performance on the Miller project, and that Abdel-Ghaffar disagreed with how Downie managed and staffed the Miller project. It also is clear that Abdel-Ghaffar disagreed with the ultimate

proposals the team made on the Miller project. The evidence also reveals that Abdel-Ghaffar disagreed with Downie and his former colleagues, and he disputes their version of many facts, during the period of time he was employed at ITW. The key, however, is that those disputed facts are not material and not relevant to the issue the Court must decide: whether Abdel-Ghaffar has presented any evidence that creates a genuine issue of material fact that he was fired not for what Downie honestly believed was his poor performance, but rather, because of some discriminatory animus. Abdel-Ghaffar has not done so.

The evidence supports the inference that Abdel-Ghaffar's disagreements with ITW's management were about the proper way to do his job and to achieve the goals of the Miller project. In the materials he submitted in opposition to ITW's Motion for Summary Judgement, Abdel-Ghaffar continues to assert that the Miller project was mishandled and that the Miller team's conclusion was wrong. However, there is nothing in the record other than Abdel-Ghaffar's unsupported, even if firmly held, speculation to suggest that these disputes were anything more than professional disagreements or had anything to do with Abdel-Ghaffar's national origin or religious beliefs. The record before this Court is devoid of any evidence, other than Abdel-Ghaffar's personal opinion and speculation, that Downie's decision to place Abdel-Ghaffar on a PIP and then ultimately terminate his employment was motivated by discriminatory animus. Such speculation, without more, does not create a disputed issue of material fact sufficient to allow Abdel-Ghaffar to proceed to trial. As the Seventh Circuit instructed in *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332 (7th Cir. 1991), the only relevant perception is that of the decision-maker. 948 F.2d at 337-38 (affirming a district court's decision to grant summary judgment to the defendant-employer when the plaintiff-employee presented only his own uncorroborated opinions of his performance). The employee "must do more than

challenge the judgment of his superiors through his own self-interested assertions . . . . The employee's perception of himself . . . is not relevant. It is the perception of the decision maker which is relevant." *Id.* (citation omitted).

The Seventh Circuit has reinforced that it is not the role of the courts "to determine the competency of or interfere in employment decisions" even if it disagrees or believes the employer was wrong. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). "Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair." *Id.* The Court's inquiry here is limited to whether a material factual dispute exists about whether ITW and Downie honestly believed the stated, legitimate and non-discriminatory reasons for the adverse action. There is nothing in the record to suggest otherwise. Abdel-Ghaffar has not presented any concrete, objective evidence that Downie fired him for any reason other than what she felt was his poor job performance.

An underlying theme in Abdel-Ghaffar's response and arguments is that ITW's witnesses are lying and should not be believed, and that he should get a chance to argue that to a jury. The Seventh Circuit, however, expressly has rejected that argument. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998) (holding that the opportunity for plaintiff to show his supervisors were lying "is not enough to forestall summary judgment. If it were, summary judgment would be a dead letter, rather than the essential screening device it has become for litigation today") (internal citations omitted).

Even assuming arguendo that Abdel-Ghaffar could establish a prima facie case of discrimination (and this is a generous assumption since not only does Abdel-Ghaffar fail to demonstrate that he was performing his job satisfactorily, the Court seriously doubts he can

satisfy the fourth prong of the indirect test and show that other similarly situated non-Muslim employees who are not of Egyptian national origin were treated differently), the burden then shifts to ITW to articulate a legitimate, nondiscriminatory reason for the adverse action. ITW has done so. It has offered legitimate, nondiscriminatory reasons for Abdel-Ghaffar's termination — his poor performance, insubordination and inability to work with his team.

Once such a reason is proffered, Abdel-Ghaffar then bears the ultimate burden of showing that the reason or reasons proffered is or are a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692-93 (7th Cir. 2000). "A pretext . . . is a deliberate false-hood." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008) (citing *Kodl v. Bd. of Educ. Sch. Dist. 45*, 490 F.3d 558, 562 (7th Cir.2007)). Abdel-Ghaffar "must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). The Seventh Circuit emphasized that "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Id.* "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005)). To meet this burden, Abdel-Ghaffar must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in ITW's asserted reason "that a reasonable person could find [it] unworthy of credence." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Abdel-Ghaffar provides no evidence to establish that ITW's stated reasons are pretextual other than his own opinion that he was performing his job well and unsupported speculation that he was fired because of unlawful discrimination. The Seventh Circuit previously has recognized that "a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions." *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996). A court should not "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001).

For all of the reasons discussed herein, no evidence exists from which a reasonable trier of fact could conclude that Downie harbored some discriminatory animus toward Abdel-Ghaffar because there were no other qualified candidates and she was forced to hire him or that Abdel-Ghaffar's national origin, ancestry, or religious beliefs played any role in Downie's decision to terminate his employment. Because the objective and material evidence before the Court would not allow a reasonable jury to conclude that ITW's proffered justification for Abdel-Ghaffar's termination was pretextual, Abdel-Ghaffar's discrimination claims also fail under the indirect method assuming arguendo he could establish a prima facie case of discrimination. Accordingly, ITW is entitled to judgment as a matter of law with respect to Abdel-Ghaffar's claims for national origin, ancestry and religious discrimination.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, defendant Illinois Tool Work Inc.'s Motion for Summary Judgment [ECF No. 115] is granted on all claims.

The Court directs the Clerk to enter judgment in favor of defendant Illinois Tool Works, Inc. and against plaintiff Hisham Abdel-Ghaffar. This is a final and appealable order. Civil case terminated.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 24, 2015