IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS TOOL WORKS, INC., )<br>)<br>Defendant/Counter-Plaintiff, )<br>)<br>v. )<br>)<br>HISHAM ABDEL-GHAFFAR, )<br>)<br>Plaintiff/Counter-Defendant. ) | Case No. 12-CV-5812<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Hisham Abdel-Ghaffar ("Abdel-Ghaffar") filed a lawsuit against his former employer Defendant/Counter-Plaintiff Illinois Tool Works, Inc. ("ITW") alleging national origin and religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and ancestry discrimination under 42 U.S.C. § 1981 ("Section 1981"). ITW filed a counterclaim against Abdel-Ghaffar for breach of contract. [ECF No. 22]. ITW moved for summary judgment on Abdel-Ghaffar's discrimination claims, but not on its Counterclaim. [ECF No. 115]. The Court granted ITW's Motion for Summary Judgment on the discrimination claims and deferred entry of final judgment pending the resolution of ITW's Counterclaim. [ECF No. 188]. This matter is now before the Court on ITW's Motion for Summary Judgment on its Counterclaim [ECF No. 190]. For the reasons discussed herein, ITW's Motion for Summary Judgment on its Counterclaim is denied.

## I. LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). A court

must construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The Court will not grant summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thomas v. Norfolk S. R. Co.*, 2013 WL 791449, at *3 (N.D. Ill. Mar. 4, 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II. STATEMENT OF FACTS

The following facts are not disputed and are taken from the parties' submissions. The Court assumes familiarity with it prior Memorandum Opinion and Order. [ECF No. 188]. Abdel-Ghaffar was employed as a Senior Research Engineer by ITW for seven months from February 7, 2011, until ITW terminated his employment on September 16, 2011. *See* [ECF Nos. 192, 205]. Abdel-Ghaffar relocated to Chicago to work for ITW. On or about February 7, 2011, ITW and Abdel-Ghaffar entered into the ITW Relocation Payback Agreement (the "Payback Agreement") in conjunction with his employment at ITW. Under the terms of the Payback Agreement, ITW agreed to advance Abdel-Ghaffar certain expenses relating to his relocation to Chicago (the "Payment").

Pursuant to the Payback Agreement, if Abdel-Ghaffar's employment was terminated voluntarily or for cause within the first twelve months of his employment, he agreed to repay 100% of the Payment to ITW no later than his last day of employment. *See* [Abdel-Ghaffar

Exhibit QQ HAG-0014].[1] If Abdel-Ghaffar's employment was terminated voluntarily or for cause after twelve months, but prior to twenty-four months after he began working for ITW, he agreed to reimburse ITW a prorated portion of the Payment no later than his last day of employment. *Id.* With the exception of the Payback Agreement, Abdel-Ghaffar was an at-will employee and could be terminated without cause at any time.

ITW advanced a lump sum of $12,500 and other amounts to Abdel-Ghaffar for relocation expenses. ITW calculated a gross-up tax of $6,339.22 for the $12,500 lump sum and paid the tax directly to the taxing authorities. ITW paid a total of $18,839.22 under the Payback Agreement. Abdel-Ghaffar has not repaid any of the Payment.

### III. DISCUSSION

ITW asserts that Abdel-Ghaffar was terminated "for cause" and thus has breached his contractual obligation to reimburse ITW for 100% of the Payment advanced to him pursuant to the Payback Agreement. [ECF No. 190]. To prove a breach of contract under Illinois law, ITW must establish: (1) the existence of the contract; (2) ITW's performance under the contract; (3) Abdel-Ghaffar's breach of the contract; and (4) ITW's resulting injury from the breach. *Burrell v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004).[2]

---

[1] The Court recognizes that it is citing to a document that was filed under seal in this case and that it will cite again in this Opinion to other documents filed under seal in connection with the briefing of the pending motion. The Seventh Circuit, however, has held "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) (citing *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002); *Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000)). ITW has seven days from the issuance of this Opinion to file a memorandum explaining why these documents should remain under seal. If ITW does not have any objection to these documents becoming part of the public record, then it shall file electronically copies of the documents so that the record in this case is complete.

[2] The parties do not dispute that the Payback Agreement is governed by Illinois contract law.

The crux of this matter is element three: whether Abdel-Ghaffar breached the Payback Agreement. As discussed above, the Payback Agreement only requires Abdel-Ghaffar to reimburse ITW the Payment if he leaves voluntarily or is fired "for cause." *See* [Abdel-Ghaffar's Exhibit QQ HAG-0014]. It is undisputed that Abdel-Ghaffar's employment ended involuntarily. In order for Abdel-Ghaffar to have breached the Payback Agreement, however, his termination would have to be for cause.

ITW's Relocation Policy Guidelines (the "Guidelines") state that Abdel-Ghaffar "will be required to reimburse ITW 100% of the relocation cost . . . if within 12 months . . . [ITW] terminates [his] employment for Cause—as defined on the [] Payback Agreement." [Abdel-Ghaffar's Exhibit QQ ITW 000220]. The Payback Agreement, however, does not define the term for cause. Nor does the term for cause have a generally accepted definition in employment litigation. Nevertheless, ITW argues that the Court already has adjudicated the issue of whether Abdel-Ghaffar was terminated for cause in the context of granting ITW summary judgment on Abdel-Ghaffar's discrimination claims. [ECF Nos. 190, 191 and 219]. ITW misconstrues the Court's previous holding.

ITW is correct that Abdel-Ghaffar already has had his bite at the apple to establish a *prima facie* case of discrimination. [ECF No. 188]. As the Court held in its previous Order, it "is clear that [Abdel-Ghaffar's] supervisor believed that he was not performing his job satisfactorily and was not meeting ITW's legitimate performance expectations . . . ." *Id.* at 20. In discrimination cases, however, a court's inquiry is confined to a subjective determination of whether the employer honestly believed that the employee's job performance was unsatisfactory. *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 627 F.3d 596, 601 (7th Cir. 2010) ("It's not the court's concern that an employer may be wrong about its employee's performance" when

4

determining discriminatory animus.); *see also Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) ("Arguably, the [employer] overacted and unnecessarily fired an employee with an otherwise competent performance record. Nevertheless, it is not our role [in discrimination cases] to determine the competency of or interfere in employment decisions . . . [unless] the employer's decision is unlawful."); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.").[3]

Whether good cause for termination exists, however, requires an objective inquiry; one that the Court did not undertake in adjudicating Abdel-Ghaffar's discrimination claims. *Giunta v. Am. Airlines, Inc.*, 1986 WL 11357, at *2 (N.D. Ill. Oct. 7, 1986) ("A condition of 'good cause' is different from a condition of 'satisfactory performance.' The former is an objective criterion, while the latter is a subjective decision."). Under Illinois contract law, if ITW wanted to premise the for cause condition on its subjective satisfaction with Abdel-Ghaffar's job performance, ITW would have had to explicitly do so in the contract. *Brant Const. Co., Inc. v. Metro. Water Reclamation Dist. of Greater Chicago*, 967 F.2d 244 (7th Cir. 1992). In order to read the for cause condition separate from the rest of the contract, which is at-will, the term for cause must mean more than ITW's subjective dissatisfaction with Abdel-Ghaffar's job performance. To hold otherwise, *i.e.* to recognize ITW's subjective dissatisfaction as a valid basis for causal termination, would make the for cause condition essentially meaningless and would allow ITW to terminate Abdel-Ghaffar at-will and still be able to seek reimbursement of the Payment. *Eakins v. Hanna Cylinders, LLC*, 42 N.E.3d 858 (Ill. App. 2d Dist. 2015).

---

[3] *See also Id.* at 22 ("The Court's inquiry here is limited to whether a material factual dispute exists about whether ITW and Downie *honestly* believed the stated, legitimate and non-discriminatory reasons for the adverse action . . . . Abdel-Ghaffar has not presented any concrete, objective evidence that Downie fired him for any reason other than what *she felt* was his poor job performance.") (emphasis added).

5

Because ITW did not define the term for cause in the contract, "a reasonableness standard is favored by the law [because] the contract concerns matters capable of objective evaluation." *Canel v. Fed. Home Loan Mortg. Corp.*, 1985 WL 2929, at *2 (N.D. Ill. Sept. 30, 1985). "Whether [ITW's] decision was a reasonable exercise of its discretion is a question of fact to be resolved by the trier of fact and it should not [be] resolved summarily" at this time. *McCleary v. Wells Fargo Securities, L.L.C.*, 29 N.E.3d 1087, 1097 (Ill. App. 1st Dist. 2015); *see also Poulos v. Lutheran Soc. Services of Illinois, Inc.*, 728 N.E.2d 547, 558 (Ill. App. 1st Dist. 2000) (stating that it is for the jury, as the ultimate trier of fact, to determine whether circumstances establish cause for termination).

Abdel-Ghaffar has submitted evidence that creates a genuine issue of material fact as to whether his job performance was objectively satisfactory. It is true that he cannot use these facts to reargue his discrimination claims. As to whether Abdel-Ghaffar was discharged for cause, however, the Court finds that he "has assembled a number of pieces of evidence, none perhaps dispositive in itself, but that taken as a whole point in the same direction and thus provide[s] adequate support to avoid summary judgment." *Nichols v. Illinois Dept. of Transp.*, 2016 WL 212917, at *13 (N.D. Ill. Jan. 19, 2016). Accordingly, ITW is not entitled to a judgment as a matter of law with respect to its Counterclaim for breach of contract. At trial, the burden will be on ITW to prove that Abdel-Ghaffar's performance was objectively inadequate and that he was thus discharged for cause. *Foster v. Springfield Clinic*, 410 N.E.2d 604, 608 (Ill. App. 4th Dist. 1980).

## IV. CONCLUSION

For the reasons set for in the Court's Memorandum Opinion and Order, Defendant/Counter-Plaintiff Illinois Tool Works Inc.'s Motion for Summary Judgment [ECF No. 190] is denied. This case is set for a status hearing on June 28, 2016, at 10:30 a.m. to set a trial date and dates for filing pretrial motions and a pretrial order, if ITW still wants to pursue its counterclaim through trial.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 20, 2016